**UNITED STATES of America**

v.

**Benrus Eugene BROWN.**

**Crim. No. SA69CR97.**

United States District Court
W. D. Texas,
San Antonio Division.

Oct. 31, 1969.

**416**

Reese L. Harrison, Jr., Asst. U. S. Atty., San Antonio, Tex., for the United States.

Fred A. Semaan, San Antonio, Tex., for defendant.

SPEARS, Chief Judge.

## OPINION

On October 8, 1969, the defendant, Benrus Eugene Brown, pleaded "not guilty" to an information charging him with "knowingly, wilfully and unlawfully attempting to board an aircraft being operated by an air carrier in air transportation at the San Antonio International Airport * * * while having on or about his person a concealed, deadly and dangerous weapon, to-wit, a .22 caliber pistol; in violation of Title 49, United States Code, Section 1472(1)." The defendant having waived a jury, the trial was had before the Court.

At the conclusion of the government's case the defendant made a motion for acquittal on the grounds that his acts did not constitute an attempt to board an aircraft. The motion was overruled, after which the defendant took the stand in his own defense. Upon the conclusion of the case, the Court entered a finding of guilty as charged. This memorandum opinion shall constitute a compliance with Rule 23(c), Federal Rules of Criminal Procedure. If additional findings of fact are desired they will be furnished on request.

The questions involved in this proceeding are:

(1) Did the acts of the defendant constitute an attempt to board an aircraft?

(2) Were statements made by the defendant at the time of his arrest admissible, in view of the fact that he was not given any warnings under the rule in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)?

(3) Was the evidence which was seized from the defendant, that is, a .22 caliber pistol and an airplane ticket, illegally obtained from him as the result of an unlawful search and seizure?

The first question is answered in the affirmative, and the second and third questions in the negative.

The evidence reflects that on May 10, 1969, a customer service agent for Braniff International was on duty at Gate 25 at San Antonio International Airport, a municipal airport, as defined in Title 3A, Article 46d–1, 2 and 7, Vernon's Annotated Texas Statutes. The satellite area of that airport has within it Gates 20 through 27. At each of these gates is a departure lounge which has a customer service agent's desk at its entrance. In order to board a flight departing from one of those gates a passenger must first present his ticket to the agent at the desk. One copy of the ticket is taken there, and the remaining portion is returned to the passenger, who then enters the departure lounge to wait until the flight is called for take-off, whereupon, the passenger exits at the rear of the departure lounge and enters

a covered entrance ramp, or jetway, leading to the door of the aircraft.

On the occasion in question, while the customer service agent was checking passengers for boarding on Braniff Flight 140, destined for Chicago, Illinois and scheduled for departure at 11:15 A. M., he checked in a man whom he later identified in the courtroom as the defendant. A Braniff ticket envelope was identified as one stamped "SAT 10" by the agent, which meant that the passenger holding that envelope had been checked in, and that his status had been confirmed for space on said flight. A ticket was identified by the agent as one he retained when the defendant approached his desk and subsequently passed into the departure lounge.

Between five and ten minutes after the defendant had been checked into the departure lounge, an unknown male person advised the agent that he had seen the defendant drop an object, which appeared to be either a weapon or a smoking pipe, while the defendant was standing in line to enter the departure lounge, and that the defendant had picked up the object and placed it in his pocket. The agent then paged an airport security guard, who shortly thereafter appeared at the departure lounge, and was advised in detail by the agent with respect to what had transpired, including the information related to the agent by the unknown male person, after which the security guard approached the defendant and asked him if he had a ticket, to which the defendant responded in the affirmative. The security guard then asked the defendant if he had anything to declare, to which the defendant answered in the negative, and then asked the guard, "What do you mean?". The defendant was then asked if he had a weapon, to which he responded "Yes", and offered to get it. The security guard, however, stated that he would prefer to take the weapon off the defendant himself rather than have the defendant give it to him. It is undisputed that the security guard did not give the defendant any of the constitutional warnings prescribed by the Supreme Court in Miranda v. Arizona, supra.

(1) *The attempt to board the aircraft.*

The government argues that when the defendant appeared at the customer service agent's desk, surrendered his ticket, and passed into the departure lounge, this constituted an "attempt to board an aircraft". The defendant, on the other hand, contends that such an attempt cannot be consummated until the passenger actually sets one foot on the aircraft itself. He insists that to hold otherwise would permit the line to be drawn at an earlier time than when entrance is made into the departure lounge, as, for example, when the ticket is purchased, or even when the prospective passenger enters a vehicle at his home to travel to the airport. Of course, those limited theoretical factual situations are not present here, but if defendant's argument of "one foot on and one foot off" is allowed to prevail it would distort the meaning of the statute and frustrate the intent of Congress.

■ Black's Law Dictionary defines "attempt" as "an effort or endeavor to accomplish a crime, amounting to more than mere preparation or planning for it, which, if not prevented, would have resulted in the full consummation of the act attempted, but which, in fact, does not bring to pass the party's ultimate design".

Webster's Third New International Dictionary gives the following definition of "attempt": "to make an effort to do, accomplish, solve, or effect—often used in venturous or experimental situations sometimes with implications of failure".

Defendant suggests a similar definition: "to make trial or experiment of; to try; to endeavor to do or perform; to venture upon".

■ Under the facts and circumstances of this case, either of the quoted definitions fully supports this Court's holding that the surrendering of the ticket at the customer service agent's desk, and the subsequent entry into the departure lounge for the flight covered

by that ticket, constituted an attempt on the part of the defendant to board the aircraft to be used on that flight.

(2) *The admissibility of statements made by defendant at the time of his arrest.*

■ The airport security guard was an employee of the City of San Antonio on the date in question. In that capacity he was invested "with full police powers", see Article 46d–7 of Title 3A, V.A.T.S., and, therefore, had the power of arrest. See also National Council of Railway Patrolmen's Union, A.F. of L. v. Sealy, 56 F.Supp. 720 (S. D.Tex.1944).

At the time the security guard approached the defendant and began to question him, there was probable cause for the guard to believe that an offense had been committed and that the defendant had in fact committed it. In addition, there is no doubt that the security guard fully intended to take the defendant into custody if it became necessary for him to do so in order to determine whether or not the defendant had a weapon. Clearly, at that time, the accusatory stage of the proceedings had been reached, and the defendant was more than a mere suspect. He was, in fact, under arrest, and statements elicited from him by the security guard, absent the *Miranda* warnings, are inadmissible in evidence against him.

(3) *The admissibility of evidence seized from defendant.*

■■ From the facts already related, the conclusion has been reached that the defendant was under arrest when the security guard began to question him in the departure lounge. This Court finds that there was probable cause for the arrest, and that the arrest was lawful. When a person is lawfully arrested, the officer has the right, without a search warrant, to make a contemporaneous search of the person of the accused for the fruits of, or the instrumentalities used to commit, the crime. Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145 (1925);

Carroll v. United States, 267 U.S. 132, 158, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Weeks v. United States, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1941). It follows, therefore, that the envelope stamped "SAT 10" containing the remaining portion of the ticket returned to the defendant, and the weapon removed from the person of the defendant by the airport security guard, as well as the ticket retained by the customer service agent, are admissible in evidence.

■ Having carefully considered the complete record in this case (including, but not limited to, the matters referred to herein), in light of the legal conclusions hereinabove expressed, this Court is of the opinion that the admissible evidence is sufficient to sustain the finding of guilty made at the conclusion of the trial.