[Crim. No. 20881. Second Dist., Div. One. Nov. 1, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD HOWARD DE STRULLE, Defendant and Appellant.

## COUNSEL

Joseph Sack, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, and Howard J. Schwab and William R. Pounders, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOOD, P. J.**—Defendant was accused in count 1 of violating section 11500 of the Health and Safety Code (possession of cocaine), and in count 2 of violating section 11530 of said code (possession of marijuana). His

motion to suppress evidence (Pen. Code, § 1538.5) was denied. In a nonjury trial he was found guilty as charged on count 1; and count 2 was dismissed in the interests of justice. He appeals from the judgment and sentence.

Appellant contends that evidence obtained from him and from his luggage at an airport was obtained by illegal search and seizure; and that the evidence does not support the judgment.

The People's case on count 1 was submitted on the transcript of the preliminary examination and the transcript of the hearing on the motion to suppress evidence.

On February 11, 1971, Officer Wingenfeld was a Deputy United States Marshal employed in an "anti-hijack detail" at the Trans World Airlines terminal at Los Angeles International Airport to "keep weapons from going on planes." In the boarding area of the terminal there were signs, in English and Spanish, that luggage was subject to search; and "announcements are made prior to boarding the aircraft" that luggage will be searched. Also, a magnetometer is inside the "jetway" (which is an "accordionlike" enclosure or hallway through which passengers go when boarding an airplane at the terminal). The magnetometer consists of two poles, approximately 6 feet in height and 36 inches apart, which have a magnetic field surrounding them; and the magnetometer will detect any ferrous metal which might pass between the poles.[1] Passengers who enter the jetway walk "in single file" between the poles; and if they have any ferrous metal a blue light appears on the magnetometer. A passenger and his luggage pass between the poles, separately; and, on the day in question, the luggage was passed through the poles "first."

About 10 a.m., Officer Wingenfeld was using the magnetometer on a jetway to an airplane which was to go to New York; and Miss Ferguson was a ground hostess there. As defendant boarded the jetway, he handed his "carry-on" luggage or bag to her; and his suitcase was passed between the poles. A blue light and a very high reading appeared on the magnetometer, which indicated to the officer that a weapon might be inside the suitcase. The light and a high reading also appeared when defendant passed between the poles.

The officer asked defendant whether he had any metal in his pockets; and he replied in the affirmative. At the officer's request, defendant removed

---

[1]The function of a magnetometer is described in *United States* v. *Lopez*, 328 F.Supp. 1077, 1085, wherein the court took judicial notice of the scientific principles utilized in a magnetometer.

several things from his pockets, including a metal clip with a burnt end, which the officer believed was a "roach clip." Then the officer asked him to pass between the poles again in order to see whether the reading would then be lowered. Defendant went between the poles, the reading was lower, and the things were returned to him.

Miss Ferguson then asked defendant whether the luggage (bag and suitcase) belonged to him and whether "they" could look through the luggage. He replied in the affirmative; and Miss Ferguson unzipped the bag in order to search it; and the officer said that he "would take it from there." The officer took the luggage to a "less conspicuous" place about 15 feet inside the jetway, and searched the bag for weapons. It was a plaid bag, approximately 2½ feet long, 2 feet high, and 10 inches wide. He saw in the bag a "baggie" which appeared to contain marijuana, and another small bag which contained white powder which appeared to be a narcotic. Defendant appeared nervous, and the officer took him and the luggage to the public relations office in order to search the luggage more thoroughly without interrupting other passengers who were boarding the airplane through the jetway. In the office, the officer removed everything from the bag and found a brick of marijuana. There was no weapon in the bag or suitcase; but, according to the officer, the metal reading by the magnetometer could have been caused by the rim and handle of the bag; and there was metal in the suitcase.

The officer also testified that it was his practice, when luggage registered a high rate on the magnetometer, to insist upon opening and inspecting the luggage whether or not the passenger granted permission therefor; and that he would insist that anything that might be metal be checked before the passenger boarded the airplane, whether the metal was "on a person or in luggage."

The luggage also contained letters addressed to the defendant and books which had his name on the inside of the covers. It was stipulated that a chemist would testify that the white powder found in the luggage contained cocaine, and that the plastic bag and the wrapped package found in the luggage contained marijuana.

With reference to appellant's contention that the evidence obtained from his luggage was obtained by illegal search, he argues that use of the magnetometer to search for weapons was prohibited by the Fourteenth Amendment, that his consent to the search was obtained by trickery in that the federal officer was in plainclothes and did not identify himself as an officer and in that use of the magnetometer upon passengers, being led down the jetway "like cattle," created "a coercive atmosphere not con-

ducive to the assertion of constitutional rights"; that he was not advised of his *Miranda* rights or of his right to refuse consent to the search; and that the search was "merely a pretext for a general search for drugs."

In *People* v. *Botos,* 27 Cal.App.3d 774 [104 Cal.Rptr. 193], the defendant therein accompanied one Wenger to a gate at an airport where he sought to board an airplane as a passenger. An airline employee stopped Wenger at the gate because he "met" a "hijacker profile" which federal officers had made from statistical information which described characteristics of likely hijackers.[2] The employee asked Wenger for identification, and then called a federal officer who was assigned to the anti-hijacking detail at the airport. The officer asked permission to look through Wenger's pocket, and asked what the bulge was. Wenger said that it was a roach holder, and he removed the holder and keys from his pocket. At the officer's request, Wenger opened the suitcase with one of the keys; and the officer saw marijuana in the suitcase, and arrested Wenger and the defendant. Upon defendant's appeal therein from her convictions of transporting and possessing the marijuana,[3] she contended that the trial court erred in denying her motion to suppress the marijuana evidence. The judgment was affirmed, and it was said (p. 778) that the guarantee of the Fourth Amendment "must be shaped by the context in which it is asserted. Here the questioning did not take place on a street or in a park, but occurred in an airline terminal at the place where passengers were boarding the plane. It is unnecessary to document the alarming increase in aircraft piracies over the last few years. The dangers presented to innocent bystanders by these crimes are apparent. When these obvious dangers are combined with the inherent difficulty of preventing hijackings, an individual's expectation of privacy from questioning or search when boarding an aircraft should not be as high as in other public places (see *United States* v. *Lindsey,* 451 F.2d 701, 703)."[4] It was also said (p. 779) that the officer's investigation was "similar to requiring an individual to pass through a magnetometer; though not permissible on the streets, it is not objectionable at the aircraft boarding ramp"; and that the officer's request to search the luggage "was justified under these circumstances, since

[2]"The detention, questioning, and weapons search of an individual has been held justified if he falls within the hijacker profile's suspect classification." (*Id.,* fn. 1, p. 778, citing *United States* v. *Lopez,* 328 F.Supp. 1077, 1097.)

[3]There was other evidence to support the judgment against her.

[4]See *Airport Security Searches and The Fourth Amendment,* 71 Columbia Law Review 1039, 1057, wherein it was said: ". . . Certainly the high incidence of air piracy, the potential threat it poses to the lives of innumerable passengers and the property of the airlines, and its possible inhibitory effect on the exercise of the constitutional right to travel all speak to the urgent need for some security measures."

it fell within the scope of the original investigation." As to appellant's further contention therein that Wenger withdrew his consent to the search when he denied having keys to open the luggage, it was said (p. 779) that whether there was a valid consent was a question of fact, and that "Throughout the proceeding, there was no refusal to cooperate or any other action consistent with a withdrawal of consent."[5]

In the present case the officer had reasonable cause to believe, from the magnetometer readings, that defendant had metal in his possession and in his luggage. In response to the officer's question, he said that he had metal in his pockets, and he removed a roach clip from his pocket. The hostess then asked whether they might look through the luggage, and he replied in the affirmative; whereupon she unzipped the luggage and the officer searched it and found the marijuana and cocaine. Whether his consent was voluntary or obtained by alleged trickery or coercion was a question of fact.[6] In addition to the aforementioned evidence of his express consent to the search, there were signs and announcements in the boarding area that passenger luggage would be searched; and defendant did not refuse to cooperate with the officer or the hostess or engage in any action inconsistent with consent to the search. Air piracy and the efforts to establish security measures for prevention thereof are matters of common knowledge. The constitutional guarantee against illegal search and seizure "must be shaped by the context in which it is asserted." (*People* v. *Botos, supra*.) In the present case, there was ample evidence from which the court could have found that defendant voluntarily consented to the search, and from which the court could properly conclude that the contraband was not obtained illegally. For a valid consent, it was not required that defendant be advised of *Miranda* rights (see *People* v. *Thomas*, 12 Cal.App.3d 1102, 1110 [91 Cal.Rptr. 867]) or of his right to refuse consent to the search (see *People* v. *Tremayne*, 20 Cal.App.3d 1006, 1015 [98 Cal.Rptr. 193]). The court did not err in denying the motion to suppress evidence or in receiving the contraband in evidence.

With reference to appellant's contention that the evidence does not support the judgment, he argues to the effect that since the evidence in the luggage should have been suppressed, there was no substantial evi-

[5]See *United States* v. *Bell,* 335 F.Supp. 797, 803, wherein the defendant, after he passed through a magnetometer and "activated" it, was subjected to a "frisk" search; and it was held that the frisk was supported either upon his consent or upon reasonable cause to believe that he was armed and dangerous to the safety of the officers and other persons.

[6]Consent could have been freely given even though defendant did not know that Wingenfeld was an officer. (See *Mann* v. *Superior Court,* 3 Cal.3d 1, 8 [88 Cal.Rptr. 380, 472 P.2d 468].)

dence to support the conviction. This argument is without merit,—as hereinabove concluded, the court did not err in denying the motion to suppress such evidence. He argues further, with reference to his contention regarding insufficiency of the evidence, that there was no competent evidence that he owned the luggage. There was evidence that when defendant approached the magnetometer he gave to the hostess the luggage in which the cocaine and marijuana were found, and she put it on a table; and he replied in the affirmative to her questions as to whether the luggage belonged to him and whether she and the officer might search it. The evidence supports the judgment.

Affirmance of the judgment is an affirmance of the sentence.

The judgment is affirmed.

Lillie, J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 29, 1972. Peters, J., was of the opinion that the petition should be granted.