[Crim. No. 21700. Second Dist., Div. Four. Jan. 24, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID LAURENCE LACEY, Defendant and Appellant.

## COUNSEL

Joseph Shemaria, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, William R. Pounders and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**DUNN, J.**—A three-count information charged defendant with (count I) possession of a narcotic (cocaine) for sale, a felony, in violation of Health and Safety Code section 11500.5, (count II) possession of a narcotic (marijuana), a felony, in violation of Health and Safety Code section 11530 and (count III) transporting and attempting to transport a narcotic (cocaine), a felony, in violation of Health and Safety Code section 11501. Defendant pled not guilty and, pursuant to Penal Code section 1538.5, moved to suppress the evidence against him. The motion was denied, following which defendant withdrew his plea of not guilty and pled guilty to count I. Counts II and III were dismissed in the interests of justice, on motion of the prosecuting attorney. (Pen. Code, § 1385.) Proceedings were suspended and defendant was placed on five years' probation under various restrictions. He appeals from the order granting probation (judgment, Pen. Code, § 1237, subd. 1). He raises, as he may, the correctness of the court's denial of his motion to suppress. (Pen. Code, § 1538.5, subd. (m).)

At the hearing of defendant's Penal Code section 1538.5 motion, it was stipulated that no arrest or search warrant had been issued. As witnesses at this hearing Malcolm Knight, a special deputy United States marshal, testified for the People; defendant testified, also calling a metallurgical engineer as an expert witness. On appeal we must ignore any conflicts in the evidence and view that evidence in a light supporting the court's ruling, drawing from the evidence such inferences, if any, favoring the ruling as are reasonably deducible.

Viewed as indicated, the evidence disclosed that Deputy United States Marshal Knight was stationed at Los Angeles International Airport, his assigned duty being to "prevent hijacking of aircraft." He operated and monitored a ferrous metal detecting device, called a "magnetometer," located in the "jetway" (an accordion-like hallway through which passengers pass) used for boarding a Western Air Lines flight to Seattle-Anchorage. The magnetometer was used to detect "any possible weapons that may be concealed by boarding passengers." Two signs were posted outside the jetway entrance stating, "Passengers and baggage subject to search. F.A.A. regulations" and "Federal law prohibits the carrying of concealed weapons aboard aircraft."

Defendant was seventh or eighth in a line of approximately seventy passengers waiting to board and he had a boarding pass. As he walked between the two poles of the magnetometer, the instrument disclosed he had a suspect amount of metal on his person. Knight stepped forward, identified

himself, told defendant what the instrument showed and asked him if he had any metal on his person. Defendant handed Knight a pocket watch. Knight asked him to walk between the poles again. As defendant did so, the instrument again showed he was carrying metal in excess of the minimum detectable by the machine. Knight inquired if defendant had anything in his boots and defendant said, "no." Knight then asked him if he could check his pockets and defendant said, "Okay."

Knight began a patdown search and in the top of defendant's right boot he felt a firm, solid object 8-10 inches long and suspected it was a knife. He started to raise defendant's trouser leg to see what the object was when defendant said, "Don't do that," turned and walked out of the jetway. Knight followed him a distance of approximately 30 feet, caught up with him near the ticket entrance and asked him to face the wall so that he could search him. When Knight began to check his boot again, defendant appeared extremely nervous and turned back toward Knight so that Knight, believing defendant might try to run away, took his arm and directed him to an office. In the office, he asked defendant to remove the object from his right boot. Defendant pulled out of it a sock which appeared to contain a weapon, a knife. On Knight's request, defendant dumped the sock's contents on the desk. These proved to be two 35 mm. film cans containing marijuana seeds and a clear plastic wrapping containing cocaine or heroin.

Defendant was arrested and taken to a substation for booking. A further search there revealed that his left boot contained another plastic container of cocaine or heroin.

Knight testified that defendant was free to leave at any time up to the time he detected the object in his boot, and that defendant apparently consented to the frisk, or patdown search, up to the time he said "Don't do that" and walked away. The magnetometer reading, the solid object felt in defendant's boot and defendant's "attempt to get away from my searching him further" all led Knight to believe the boot might contain a weapon.

Under 49 United States Code section 1472, subdivision (1), it is a federal crime to board, or to attempt to board, a commercial airplane with a concealed, dangerous weapon.[1] There is no doubt defendant was attempting to

---

[1]This section reads, in part: ". . . whoever, while aboard an aircraft being operated by an air carrier in air transportation, has on or about his person a concealed deadly or dangerous weapon, or whoever attempts to board such an aircraft while having on or about his person a concealed deadly or dangerous weapon, shall be fined . . . or imprisoned not more than one year, or both."

A valuable discussion of the legislative and other history of this section appears in *United States* v. *Lopez* (E.D.N.Y. 1971) 328 F.Supp. 1077.

board such craft. (*United States* v. *Brown* (W.D.Tex. 1969) 305 F.Supp. 415; *United States* v. *Ware* (W.D.Okla. 1970) 315 F.Supp. 1333.)

The initial frisk, or patdown search, of defendant was lawful, being justified by the information received from the magnetometer. Thus, although *United States* v. *Epperson* (4th Cir. 1972) 454 F.2d 769, 771, 772, has held that the use of a magnetometer constitutes a method of search under the circumstances, it has further stated: "We think the search for the sole purpose of discovering weapons and preventing air piracy, and not for the purpose of discovering weapons and pre-criminal events, fully justified the minimal invasion of personal privacy by magnetometer . . . . It is clear to us that to innocent passengers the use of a magnetometer to detect metal on those boarding an aircraft is not a resented intrusion on privacy, but, instead, a welcome reassurance of safety. . . . the reasonable fear of the marshal for the safety of airline passengers increased and he was entitled, for their protection, to conduct a carefully limited search of the clothing of Epperson in an attempt to discover weapons which might be used for air piracy." In *United States* v. *Lindsey* (3d Cir. 1971) 451 F.2d 701, no magnetometer was used but the defendant there, an intended airplane passenger, appeared "nervous" to the United States marshal who then asked him for identification. While endeavoring to identify himself, defendant used four different names and, in the identification process, the deputy marshal observed two bulges in defendant's pocket. Being afraid they represented weapons, the marshal conducted a patdown search of defendant and noted the two bulges seemed solid and firm. He reached into defendant's pocket to remove the causes of the bulges and discovered they were packages of heroin. The court held the frisk was justified under *Terry* v. *Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868], inasmuch as the marshal believed defendant might be an intended hijacker. In that context (p. 703): ". . . the level of suspicion required for a *Terry* investigative stop and protective search should be lowered." (Also see: *People* v. *De Strulle* (1972) 28 Cal.App.3d 477, 481 [104 Cal.Rptr. 639]; *People* v. *Botos* (1972) 27 Cal.App.3d 774, 778-779 [104 Cal.Rptr. 193].)

As stated in *United States* v. *Bell* (E.D.N.Y. 1971) 335 F.Supp. 797, 803: "There is no standard quantum of reasonableness fixed by case law or statute that the officer in the field or a reviewing court can apply. Rather, *Terry* requires a balancing of interests—the Government's interest to prevent crime in its formative stages as opposed to an individual's right to privacy and the right to be free from oppressive search techniques. . . . Here, the search was conducted because an objective system used to detect air pirates had indicated that the defendant was . . . a potentially armed and dangerous air pirate . . . . On balance then, the court finds the in-

trusion into the defendant's person by the frisk search for weapons justifiable and constitutional."

Having reasonable cause to believe defendant carried a concealed, dangerous weapon, Knight's detention of defendant and his search and seizure of the contraband followed by a formal arrest, were lawful.

Defendant argues that Deputy United States Marshal Knight had no legal authority to arrest him, thus rendering the arrest and search both illegal. We disagree.

It is true that, as a United States marshal, Knight could make an arrest without warrant for federal misdemeanors only if the same actually were committed in his presence (18 U.S.C. § 3053);[2] reasonable cause to believe a misdemeanor was being or had been committed would not suffice. It seems also true that a violation of subdivision (1) of 49 United States Code section 1472, of which defendant was suspected, is a federal misdemeanor, not a felony (18 U.S.C. § 1).[3]

It further is true that under California law a "peace officer" lawfully can make a warrantless arrest for a California misdemeanor when he merely has reasonable ground to believe that such has been committed in his presence (Pen. Code, § 836, subd. 1); however, Knight does not qualify as a peace officer. (Pen. Code, § 7, subd. 8, § 830 and § 830.4, subd. (a)(14).) Therefore, as to California crimes, Knight could arrest only as a private person; and a private person may arrest for a misdemeanor only if one actually is committed or attempted in his presence (Pen. Code, § 837, subd. 1); a reasonable belief that a misdemeanor has been committed or attempted is insufficient.

Here, as a result of his investigative patdown, Knight detected a firm object 8-10 inches long in defendant's boot and believed defendant might be carrying a concealed knife. Such knife might have been a prohibited dirk or dagger, a California felony (Pen. Code, § 12020), or a switchblade knife, a California misdemeanor (Pen. Code, § 653k). A concealed knife could be a source of danger to Knight and to air passengers and thus induce Knight to entertain a legitimate concern for his own and for their safety.

---

[2]18 United States Code section 3053 reads, in part: "United States marshals . . . may make arrests without warrant for any offense against the United States committed in their presence, or for any felony . . . if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony."

[3]18 United States Code section 1 reads, in part: ". . . (1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony. (2) Any other offense is a misdemeanor."

The investigative detention was justified at its inception; such investigation resulted not in allaying suspicion but in heightening it. It could continue until Knight's reasonable suspicions were, or should have been, allayed. (*People* v. *Botos, supra,* 27 Cal.App.3d at p. 779; *Pendergraft* v. *Superior Court* (1971) 15 Cal.App.3d 237, 242 [93 Cal.Rptr. 155].) Although an investigation cannot be instantaneously accomplished, neither can it be prolonged indefinitely. However, Knight's investigation was not unduly extended, particularly in light of the hazard of air hijacking, which underlay it. As noted in *People* v. *Botos, supra,* 27 Cal.App.3d at page 778: "It is unnecessary to document the alarming increase in aircraft piracies over the last few years. The dangers presented to innocent bystanders by these crimes are apparent. [Fn. omitted.] When these obvious dangers are combined with the inherent difficulty of preventing hijackings, an individual's expectation of privacy from questioning or search when boarding an aircraft should not be as high as in other public places [citation]."

Knight pursued defendant in order again to check his boot. When defendant appeared about to run away, Knight was not unreasonable in taking him to an office where his investigation could be continued less publicly and with more security for Knight. Such continuing investigation was justified; it lay within the scope of its origins. If defendant's boot contained no weapon, Knight's suspicion that he was an intended air pirate would have been dispelled.

■ As it turned out, defendant's boot contained contraband, possession of which is a felony. For this public offense committed in his presence, Knight was authorized, as a private person, to arrest defendant.

Knight's reasonable cause to investigate the possibility that appellant was carrying a concealed and dangerous weapon was not taken away from him by the fact defendant left the boarding line. Under the circumstances, Knight's continued investigation until he was satisfied was lawful.

The order (judgment) is affirmed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 21, 1973.