**UNITED STATES of America**
v.
**Delores Eileen WILKINSON.**
**Crim. No. 74–149.**

United States District Court,
W. D. Pennsylvania.

Feb. 14, 1975.

David B. Atkins, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Dennis J. Clark, Thomas A. Livingston, Pittsburgh, Pa., for defendant.

## OPINION

SCALERA, District Judge.

In an information defendant was charged with one count of attempting to board United Air Lines Flight No. 997 at the Greater Pittsburgh Airport while carrying a concealed weapon in her hand luggage in violation of 49 U.S.C. § 1472(l).[1] After trial by jury, she was convicted.

Defendant has filed three post-trial motions—a motion for a new trial, a motion in arrest of judgment, and motion for judgment of acquittal. A fair reading of these motions discloses that they present two issues: (1) whether the evidence is sufficient to sustain the verdict, specifically whether the facts support the jury's finding that defendant was attempting to board an airplane; and (2) whether the defendant was selectively prosecuted in violation of her constitutional right to due process of law and to equal protection of the law.

### I

Defendant contends that the evidence was insufficient to sustain the jury's verdict because the facts do not constitute an attempt to board an aircraft. Specifically, defendant argues that because she had not yet reached the agent at the departure gate to whom her flight ticket would be surrendered her action of passing through the magnetometer located in the corridor away from the agent's desk could not be considered an "attempt" to board an aircraft.

■■ The court is required to view the evidence, and all inferences that may be reasonably drawn therefrom, in the light most favorable to the government. United States v. McClain, 469 F.2d 68, 69 (3d Cir. 1972); United States v. Schall, 371 F.Supp. 912 (W.D.Pa.1974). The evidence adduced at trial establishes the following facts.[2] On March 25, 1974, at approximately 7:00 p. m., the defendant arrived at the ticket counter of United Air Lines at the Greater Pittsburgh International Airport and purchased a ticket for United Air Lines Flight No. 997 bound for Tampa, Florida. Defendant then proceeded with her ticket and her hand luggage from the ticket counter toward Flight 997's departure gate. In the airport's corridor leading to the departure gates, there are numerous signs which indicate that it is a federal offense to board or to attempt to board a commercial aircraft with a concealed weapon. The signs contain the advice that passengers will be searched for weapons. One of these warning signs was admitted into evidence as government's "Exhibit No. 2."[3] Before entering the departure lounge, in which the gates and boarding ramps to the airplanes are located, the defendant passed through the magnetometer. The magnetometer, a device which detects the presence of concealed metal objects on persons walking through it, is located approximately thirty yards from the departure lounge area. Passing through the magnetometer, a person is instructed by the airport security staff to place all metallic items on one's person in a tray,

---

1. 49 U.S.C. § 1472(l) reads in pertinent part:

   ". . . whoever, while aboard an aircraft being operated by an air carrier in air transportation, has on or about his person a concealed deadly or dangerous weapon, or whoever attempts to board such an aircraft while having on or about his person a concealed deadly or dangerous weapon, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

2. A transcript of the trial was not ordered by the defendant. Our review is based on our recollection aided by our notes.

3. The 12″ x 24″ sign reads in English and in Spanish.

   "It is a Federal Crime and a Violation of FAA Safety Regulations to: Carry Concealed Weapons Aboard Aircraft Interfere With Flight Crews Passengers and Baggage are Subject to Search."

and then asked to step through the magnetometer. At the same time, all hand luggage of a person passing through the magnetometer is surrendered to the airport security personnel in order that it may be screened by X-ray for concealed weapons. As the defendant was passing through the magnetometer, a security guard who was watching the X-ray scanner discovered that the device registered the presence of a gun in the defendant's handbag. When the gun, a loaded pistol,[4] was discovered, the defendant exclaimed that the gun belonged to her husband. After the gun was seized, the defendant was briefly detained by the airport security personnel. Then she was permitted to board Flight No. 997, which United had kept waiting for her.

Defendant's contention that the jury's verdict is unsupported by the evidence essentially focuses on the physical location of the magnetometer relative to the departure gates and the fact that all persons, passengers and non-passengers, desiring to enter the departure lounge area are required to pass through the magnetometer. Defendant argues that because she did not surrender her ticket to the airline agent located next to the departure gate and because both passengers and non-passengers pass through the magnetometer, her actions do not constitute an "attempt" to board an aircraft. Further, defendant maintains that the conviction must be overturned because the evidence does not support the conclusion that she attempted to conceal the gun. In support of her position, defendant cites United States v. Brown, 305 F.Supp. 415 (W.D.Tex.1969) and the legislative history of § 1472(l). This court disagrees.

The case of United States v. Brown, supra, does not support defendant's position. Although the facts of Brown indicated that the defendant in Brown had surrendered his flight ticket to the agent at the customer service desk located near the departure gate, the definition of "attempt" mentioned in Brown applies to the facts of the case sub judice. In Brown, "attempt" was defined as:

". . . [an] effort or endeavor to accomplish a crime, amounting to more than mere preparation or planning for it, which, if not prevented, would have resulted in full consummation of the act attempted, but which in fact, does not bring to pass the party's ultimate design." 305 F.Supp. at 415.

It is apparent that the defendant's ations constitute an "attempt" to board an airplane with a concealed, dangerous weapon. Had the defendant's weapon not been discovered at the magnetometer, she would have boarded the airplane with a concealed, loaded pistol in her handbag. The defendant had purchased her ticket and she had proceeded toward the departure gate for the purpose of boarding her flight. The logical inference which could be properly drawn by the jury from these facts is that the defendant was attempting to board Flight No. 997.

The fact that passengers and non-passengers alike are subjected to the magnetometer does not support plaintiff's contention. In the case sub judice, it is undisputed that defendant possessed a flight ticket and carry-on luggage for the boarding of her anticipated flight. The fact that the magnetometer was located before the area where a passenger would surrender the ticket to the airline agent is of no relevant significance in light of the facts which prove that defendant passed through the area in order to board a plane.

The legislative history of 49 U.S.C. § 1472(l) does not support defendant's argument. The obvious purpose of the statute is to prevent the incidence of airline hijacking aboard commercial aircraft. The most effective manner to ac-

---

4. The pistol was marked and admitted into evidence as the government's "Exhibit No. 1." Michael Stowell, a member of the airport security force who was in the vicinity of the X-ray scanner when the gun was discovered in defendant's handbag, testified that the gun was loaded.

complish this objective is by the screening of prospective passengers in the airline terminal before they board the aircraft. As defendant concedes in her brief, Congress passed this statute to cover criminal acts while "on board" and while attempting to board aircraft. Defendant's actions clearly typify the activities which the statute proscribes. Congress simply decided that to prevent hijacking, the presence of dangerous weapons on planes must be eliminated. It is regrettable that the high incidence of such crimes has necessarily caused that people be inconvenienced by being searched for weapons before entering a departure area at our commercial airports. The facts sustain the jury's verdict.

## II

Defendant argues that she was the victim of selective prosecution by the government, thus violating her constitutional right to due process of law and equal protection of the law. Defendant contends that she was intentionally discriminated against by the government's prosecution of this case because the statistics of the Greater Pittsburgh Airport police show that the vast majority of persons from whom weapons have been confiscated are not prosecuted. Appended to defendant's brief are the "Passenger Screening Reports" of the Allegheny County Police at the Greater Pittsburgh Airport covering the period from October, 1973 to, and including, September, 1974. Defendant maintains that these statistics show that her prosecution under the statute was arbitrary and based upon an unjustifiable standard.

The appended reports show the raw statistical data of the number of passengers arrested, the number of weapons discovered, and the disposition of those passengers arrested. However, these reports do not contain any analysis of the data; there is no description of the circumstances surrounding the arrests of the passengers. Nor is there any explanation whether the weapons seized were confiscated only from those passengers who were arrested or from all passengers who attempted to board airplanes. The reports also indicate that under the classification, "Number of Passengers Arrested," the police have also grouped narcotics and disorderly conduct arrests, thereby making it impossible to discern from these reports whether an arrested passenger was prosecuted for a narcotic, disorderly conduct, or a weapons possession violation. Lacking any analysis of the particular circumstances surrounding the passenger arrests, this court cannot determine whether any arbitrary classification or unjustifiable standard was utilized in determining whether to prosecute.

Defendant also cites Chief Judge Seitz' dissenting opinion in United States v. Margraf, 483 F.2d 708, 722 (3d Cir. 1973), which uses the Federal Aviation Agency's statistics about the disparity between the number of weapons seized and the number of arrests made to support the proposition that the enforcement of 49 U.S.C. § 1472($l$) has been arbitrarily and unconstitutionally applied. Defendant reasons that because a high percentage of those subject to prosecution have not been prosecuted, the conclusion is that defendant was selectively prosecuted.

We observe preliminarily that the burden of proving intentional or purposeful discrimination is upon the defendant, United States v. Malinowski, 472 F.2d 850, 860 (3d Cir. 1973) as Judge Aldisert in United States v. Berrigan, 482 F.2d 171, 175, said:

"A denial of equal protection is not a defense to the criminal prosecution in the ordinary sense in which, when the point is raised, the prosecution has to prove beyond a reasonable doubt that it is not discriminatory. It is in the nature of an injunctive proceeding to bar prosecution of a crime regardless of guilt—which the defendant must establish to the court, not the jury, 'by a clear preponderance of the proof.' People v. Utica Daw's Drug Co., 16 A.D.2d 12, 18, 225 N.Y.S.2d 128, 134 (1962)."

Moreover, the United States Supreme Court has cautioned that:

". . . the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962).

The statistics to which defendant refers simply do not show that persons arrested in similar circumstances have escaped prosecution and that the government in this case employed an arbitrary and selective motive in prosecuting the defendant.

An appropriate order will be entered.