464

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DALE HYSNER, Defendant-Appellant.

First District (5th Division)   No. 77-732

Opinion filed March 10, 1978.

Lawrence J. Suffredin, Jr., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Suzanne Philbrick, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, defendant Dale Hysner was found guilty of attempting to board an aircraft while having a firearm in his possession. (Ill. Rev. Stat. 1975, ch. 38, par. 84—1.) He was sentenced to a term of one year conditional discharge. The issues presented for review are: (1) whether passing a security screening area before entering the concourse where the gates to the aircraft are located constitutes an attempt to board an aircraft; and (2) whether defendant was exempt by reason of a New York license to carry a weapon and without notifying the proper authorities of his possession of the firearm. We affirm the trial court.

Patty Olander testified. She worked for Security Services and her duties were to screen passenger baggage with an X-ray machine. The machines are located before reaching the concourse area. On April 11, 1976, she screened defendant's suitcase and noted the presence of a gun inside. She called Officer Bolin and asked defendant to open the suitcase. Defendant was cooperative but did not tell her he had a permit from the State of New York to carry a weapon.

Officer Bolin testified that he was a security officer at O'Hare Field. On April 11, 1976, about 4:30 p.m., he arrested defendant after finding a

loaded .25-caliber automatic pistol underneath some clothes in his suitcase. Defendant had a ticket for Rochester, New York, and defendant showed him a license to carry a pistol granted by the State of New York.

Defendant testified. He was a self-employed electrical contractor living in Rochester, New York, 35 years old, married, had three children, and had never been arrested. On April 11, 1976, he was at O'Hare Field, returning to Rochester from a bowling trip to South Bend, Indiana. When he arrived at the airport, he tried to check his baggage. Defendant was told it was too late and he would have to go to the gate with the luggage. He stated he did not intend to carry it onto the plane. Defendant admitted he had failed to indicate to the baggage check personnel that there was a gun in the suitcase. He further testified he had flown approximately twice in the last year and he was aware of the duties of the security people.

OPINION

Defendant first contends that passing through a screening area in the outer terminal, prior to entering the concourse where the gates to the aircraft are located, does not constitute an attempt to board an aircraft as proscribed by Illinois Revised Statutes 1975, chapter 38, paragraph 84—1,[1] which paragraph provides:

> "It is unlawful for any person to board or attempt to board any commercial or charter aircraft, having in his possession any firearm, explosive of any type or other lethal or dangerous weapon."

Defendant argues the literal or obvious meaning of the word "board" cannot be accomplished when the person charged has not even entered the departure lounge. He further argues the term "to board or attempt to board" is, therefore, ambiguous and such ambiguity must be resolved in his favor.

There are no cases which have construed the Illinois statute, but there are cases construing a similar Federal statute (49 U.S.C.A. §1472 (*l*)(1) (1976)), which prohibits boarding or attempting to board an aircraft while in possession of a concealed deadly weapon which would be accessible during the flight.

In *United States v. Wilkinson* (W.D. Pa. 1975), 389 F. Supp. 465, 467, *aff'd* (3d Cir. 1975), 521 F.2d 1400, the court rejected a contention similar to that made by defendant in this case. There, the fact that the screening device which detected defendant's weapon was located before the area where a passenger would surrender the ticket to the airline agent was

---

[1] Paragraph 84—1 and paragraph 84—2, hereinafter cited, are respectively sections 1 and 2 of "An Act regulating the right to board certain aircraft for hire by pay passengers and making violation thereof a criminal offense." Ill. Rev. Stat. 1975, ch. 38, pars. 84—1 to 84—7.

expressly stated to be of no relevant significance in light of the facts which proved defendant passed through the area in order to board a plane.

In *United States v. Brown* (W.D. Tex. 1969), 305 F. Supp. 415, 417-18, defendant was arrested in a departure lounge after he was discovered to be carrying a weapon. The court stated that surrendering the plane ticket at the customer service agent's desk and the subsequent entry into the departure lounge for the flight shown on the ticket constituted an attempt to board the aircraft to be used on that flight.

In *United States v. Flum* (8th Cir. 1975), 518 F.2d 39, a case very similar to the one at bar, defendant arrived at the airport, purchased a ticket and was instructed to proceed immediately to the gate where the passengers were already boarding. Defendant was arrested while passing through a security post prior to reaching the departure gate when it was discovered he had a butcher knife inside his suitcase and a switchblade knife inside a small box with other belongings. In spite of defendant's testimony that he had intended to check the bags prior to boarding, but lacked time to do so, the court sustained his conviction based on a violation of the Federal statute.

It has also been held that the Federal statute defines a general intent crime in which no specific intent need be proved. (*United States v. Flum; United States v. Dishman* (9th Cir. 1973), 486 F.2d 727, and *United States v. Margraf* (3d Cir. 1973), 483 F.2d 708, *vacated on other grounds*, 414 U.S. 1106, 38 L. Ed. 2d 734, 94 S. Ct. 833, *on remand*, 493 F.2d 1206 (3d Cir. 1974).) Therefore, the fact that a defendant had no intent to either carry the weapon on the aircraft or use the weapon once aboard the aircraft is not controlling.

■■ The reasoning in the Federal cases is persuasive. A contrary result would conflict with the objective of the Illinois statute here at issue which is to promote safety and security for commercial and charter flights. Consequently, we hold defendant's act of passing through the screening device constitutes an attempt to board an aircraft within the meaning of the foregoing paragraph 84—1.

Defendant next contends that he was not subject to the provisions of paragraph 84—1 because of certain statutory exemptions for nonresidents who are licensed to possess a firearm in their resident State. Defendant relies on paragraph 84—2 which provides:

"This Act does not apply to any person authorized by either the Federal government or any State government to carry firearms but such person so exempted from the provisions of this Act shall notify the commander of any aircraft he is about to board that he does possess a firearm and show identification satisfactory to the aircraft commander that he is authorized to carry such firearm." Ill. Rev. Stat. 1975, ch. 38, par. 84—2.

In addition, defendant refers to Ill. Rev. Stat. 1975, ch. 38, par. 83—2,[2] which provides in relevant part:

"(a) No person may acquire or possess any firearm or any firearm ammunition within this State without having in his possession a Firearm Owner's Identification Card previously issued in his name by the Department of Law Enforcement under the provisions of this Act.

(b) The provisions of this Section regarding the possession of firearms and firearm ammunition do not apply to:

\* \* \*

(10) Nonresidents, who are currently licensed or registered to possess a firearm in their resident state; \* \* \*."

The State argues that defendant's possession of a New York permit to carry a gun and paragraph 83—2 do not make defendant a person who was "authorized" under paragraph 84—2 to carry a gun onto an aircraft. It relies on the fact that in Illinois the enumerated classes of those who may carry concealed weapons is limited to law enforcement personnel. (Ill. Rev. Stat. 1975, ch. 38, pars. 24—2(a)(1) through (5).) The State also suggests that paragraph 84—2 should be interpreted to conform to the Federal statute (49 U.S.C.A. §1472 (*l*(3) (1976)) which limits those who may carry a weapon onto an aircraft to law enforcement officers of any municipal, State or Federal government authorized or required within their official capacities to carry arms.

The State's argument appears persuasive, and it would seem illogical that the legislature intended the law to be less restrictive as to those classes of persons who may carry a weapon on board an aircraft than it intended in sections 24—2(a)(1) through (5) of the Criminal Code of 1961; however, this question need not be reached. Although defendant was familiar with airport security, he did not notify anyone of the fact that he possessed a weapon; therefore, even if his New York license made him a person "authorized" under paragraph 84—2, he failed to bring himself within the exemption provided for in that section. Defendant's acts clearly come within the proscription of paragraph 84—1.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SULLIVAN, P. J., and WILSON, J., concur.

---

[2] Section 2 of "An Act relating to the acquisition, possession and transfer of firearms and firearm ammunition, to provide a penalty for the violation thereof and to make an appropriation in connection therewith." Ill. Rev. Stat. 1975, ch. 38, pars. 83—1 to 83—16.3.